1

SIGAL CHATTAH
Acting United States Attorney

2

District of Nevada
Nevada Bar No. 8264

3

ADAM FLAKE
Appellate Division Chief and

4

Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100

5

Las Vegas, Nevada 89101
(702) 388-6336

6

Adam.Flake@usdoj.gov
Attorneys for the United States

7

UNITED STATES DISTRICT COURT

8

DISTRICT OF NEVADA

9

UNITED STATES OF AMERICA,

    Case No. 2:25-cr-00227-DGC-BNW

10

          Plaintiff,

**GOVERNMENT'S OPPOSITION TO DEFENDANT GIANN ICOB**

11

    vs.

**SALAZAR DEL REAL'S MOTION TO DISMISS INDICTMENT OR**

12

GIANN ICOB SALAZAR DEL REAL,

**DISQUALIFY U.S. ATTORNEY'S OFFICE**

13

          Defendant.

14

15

CERTIFICATION: This response is timely.

16

17

18

19

20

21

22

23

24

# TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................1

II.    STATEMENT OF FACTS....................................................................................3

III.   ARGUMENT .......................................................................................................4

      A.    Analytical Framework ................................................................................4

      B.    Ms. Chattah Is Validly Serving as the Acting United States Attorney............6

      C.    An Acting United States Attorney Under the FVRA Is Not
            Limited to a 120-Day Period of Acting Service. ...........................................10

      D.    Ms. Chattah Is Authorized to Supervise Criminal Prosecutions
            by the Delegation Even If Her Acting Designation Is Invalid......................13

      E.    Ms. Chattah's Appointment Does Not Violate the Appointments
            Clause. .....................................................................................................16

      F.    Dismissal of Indictment or Disqualification of the Entire USAO-NV
            Is Not Warranted.....................................................................................18

      G.    This Court Should Not Designate an Interim United States Attorney. .........22

IV.   CONCLUSION ..................................................................................................23

i

# TABLE OF AUTHORITIES

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
   35 F.4th 1328 (Fed. Cir. 2022)..................................................................... 14, 15, 16

*Colon v. United States Attorney for the District of Puerto Rico*,
   576 F.2d 1 (1st Cir. 1978) ........................................................................................ 22

*Edmond v. United States*,
   520 U.S. 651 (1997) ........................................................................................... 16, 17

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*,
   107 F.4th 1064 (9th Cir. 2024).................................................................................. 16

*Hooks v. Kitsap Tenant Support Services, Inc.*,
   816 F.3d 550 (9th Cir. 2016) ........................................................................... 2, 5, 11

*Kajmowicz v. Whitaker*,
   42 F.4th 138 (3d Cir. 2022)............................................................................ 14, 15, 16

*Kinsella v. United States ex rel. Singleton*,
   361 U.S. 234 (1960) ................................................................................................. 20

*Mayfield v. United States*,
   599 F.3d 964 (9th Cir. 2010) .................................................................................... 21

*Myers v. United States*,
   272 U.S. 52 (1926) ............................................................................................. 16, 17

*NLRB v. SW General, Inc.*,
   580 U.S. 288 (2017) ................................................................................................... 5

*Peters v. Kiff*,
   407 U.S. 493 (1972) ................................................................................................. 20

*Russello v. United States*,
   464 U.S. 16 (1983) ..................................................................................................... 8

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ........................................................................................... 21, 22

*Tumey v. Ohio*,
   273 U.S. 510 (1927) ................................................................................................. 20

*United States v. Arthrex, Inc.*,
   594 U.S. 1 (2021) ................................................................................................ 17

*United States v. Baldwin*,
   541 F. Supp. 2d 1184 (D.N.M. 2008) ................................................................ 19

*United States v. Bolden*,
   353 F.3d 870 (10th Cir. 2003)............................................................................ 19

*United States v. Caggiano*,
   660 F.2d 184 (6th Cir. 1981)............................................................................. 19

*United States v. Eaton*,
   169 U.S. 331 (1898) .......................................................................................... 17

*United States v. Gantt*,
   194 F.3d 987 (9th Cir. 1999).......................................................................... passim

*United States v. Giraud*,
   2025 WL 2416737 (D.N.J. Aug. 21, 2025)...................................................... 7, 8

*United States v. Hilario*,
   218 F.3d 19 (1st Cir. 2000) ......................................................................... 16, 19

*United States v. Lingala*,
   91 F.4th 685 (3d Cir. 2024).............................................................................. 19

*United States v. Ruiz Rijo*,
   87 F. Supp. 2d 69 (D.P.R. 2000) ................................................................ 19, 20

*United States v. Shah*,
   43 F.4th 356 (3d Cir. 2022).............................................................................. 19

*United States v. Smith*,
   962 F.3d 755 (4th Cir. 2020).................................................................. 16, 17, 20

*United States v. Suescun*,
   237 F.3d 1284 (11th Cir. 2001) ....................................................................... 19

*United States v. Valdez-Santana*,
   279 F.3d 143 (1st Cir. 2002) ............................................................................ 20

*United States v. Vlahos*,
   33 F.3d 758 (7th Cir. 1994)............................................................................... 19

*United States v. W.R. Grace*,
   526 F.3d 499 (9th Cir. 2008)............................................................................ 16

*United States v. Whittaker,*
   268 F.3d 185 (3d Cir. 2001) ................................................................................ 19

*United States v. Williams,*
   68 F.4th 564 (9th Cir. 2023) .............................................................................. 19

*United States v. Young,*
   541 F. Supp. 2d 1226 (D.N.M. 2008) ................................................................ 20

*Ward v. Village of Monroeville,*
   409 U.S. 57 (1972) ............................................................................................. 20

*Warren v. Fox Family Worldwide, Inc.,*
   328 F.3d 1136 (9th Cir. 2003) ........................................................................... 21

**Statutes**

5 U.S.C. § 3345 ...................................................................................................... passim
5 U.S.C. § 3346 ................................................................................................... 1, 2, 12
5 U.S.C. § 3347 ....................................................................................................... 11, 14
5 U.S.C. § 3348 ....................................................................................................... 14, 15
5 U.S.C. § 3349 ............................................................................................................... 9
28 U.S.C. § 346 ............................................................................................................. 14
28 U.S.C. § 503 ............................................................................................................... 5
28 U.S.C. § 509 ...................................................................................................... passim
28 U.S.C. § 515 ...................................................................................................... 2, 6,13
28 U.S.C. § 519 ....................................................................................................... 17, 18
28 U.S.C. § 541 ......................................................................................................... 4, 6
28 U.S.C. § 542 ...................................................................................................... passim
28 U.S.C. § 543 ............................................................................................................... 6
28 U.S.C. § 546 ...................................................................................................... passim
28 U.S.C. § 547 ............................................................................................................. 12
28 U.S.C. § 510 ............................................................................................................. 13
29 U.S.C. § 153 ............................................................................................................. 11
28 U.S.C. § 546 ............................................................................................................... 4
28 U.S.C. § 516 ............................................................................................................. 19
35 U.S.C. § 3 ................................................................................................................. 14

**Rules**

Fed. R. Crim. P. 7 ........................................................................................................ 20
Fed. R. Crim. P. 12 ...................................................................................................... 20

# I.

## INTRODUCTION

The defendants have moved to dismiss their indictments on the ground that Sigal Chattah cannot serve as the Acting United States Attorney for the District of Nevada. *See* Motions to Dismiss ("MTD").[1] The premise is wrong, and the conclusion does not follow.

First, Ms. Chattah is validly serving as the Acting United States Attorney under the Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq*. The Attorney General reclassified the prior First Assistant United States Attorney as Executive United States Attorney, which the Attorney General could do under 28 U.S.C. § 542(b). Once (a) Ms. Chattah resigned as interim United States Attorney, and (b) the Attorney General appointed her as Special Attorney and designated her as First Assistant United States Attorney (exercising authority under §§ 509, 510, and 515), Ms. Chattah automatically became the Acting United States Attorney under 5 U.S.C. § 3345(a)(1).

Second, defendants are mistaken that Ms. Chattah's time limit for serving as acting United States Attorney under the FVRA has expired. Under the FVRA, an acting official, by default, may serve for 210 days after the vacancy occurs. *See* 5 U.S.C. § 3346. Where, as the defendants contend here, MTD 17, the vacancy occurred during a presidential transition, that

---

[1] On July 29, 2025, the grand jury returned an indictment against Defendant Giann Icob Salazar Del Real. 2:25-cr-227, ECF No. 1. On July 30, 2025, the grand jury returned an indictment against Defendant Shamar Garcia. 2:25:cr-230, ECF No. 1. On August 13, 2025, the grand jury returned an indictment against Defendant Devonte Jackson. 2:25-cr-240, ECF No. 5. On August 28, the grand jury returned an indictment against Defendant Jorge Enriquez. 3:25-cr-26, ECF No. 17. The Federal Public Defenders Office filed substantially similar motions to dismiss in each case. *See, e.g.*, 2:25-cr-230, ECF No. 18. On September 2 and 5, 2025 the Ninth Circuit designated this Court to preside over these cases. *See, e.g.*, 2:25-cr-230, ECF No. 25. In accordance with the Court's instructions at the September 4, 2025, status conference, the government files an identical brief in each case, changing only the caption. The government refers to the defendants collectively as "the defendants" and cites the defendants' substantially similar motions to dismiss as "MTD."

1

1    time is extended to 300 days. *See id.* § 3349a. That time may be further extended if the President

2    nominates someone for the position of United States Attorney. *See id.* § 3346. Even if that does

3    not happen, Ms. Chattah may serve as acting United States Attorney well into November.

4    There is no basis for the defendants' suggestion that, rather than applying the FVRA's time

5    limits to Ms. Chattah's acting service, it should instead borrow the 120 day time limit

6    applicable to an interim United States Attorney appointed under § 546(d), given that the

7    defendants in their motion assume that under controlling Ninth Circuit precedent both § 546

8    and the FVRA are available to designate officials to perform the functions of United States

9    Attorney in this district. *See* MTD 26 n.33 (citing *Hooks v. Kitsap Tenant Support Services, Inc.*,

10   816 F.3d 550 (9th Cir. 2016)).

11       Finally, even were Ms. Chattah's service as Acting United States Attorney in doubt,

12   there still would be no basis to bar her or the Assistant United States Attorneys assigned to

13   these cases from supervising or prosecuting them. At minimum, the Attorney General validly

14   appointed Ms. Chattah as a Special Attorney under 28 U.S.C. § 515 and directed her to

15   supervise the United States Attorney's Office for the District of Nevada ("USAO-NV").

16   Whether or not Ms. Chattah technically qualifies as Acting United States Attorney, the

17   Attorney General has validly delegated to her the authority to supervise all pending

18   prosecutions and other matters in the USAO-NV, subject in turn to the supervision by the

19   Attorney General and Deputy Attorney General, both of whom are Senate-confirmed.

20   Similarly, the Assistant United States Attorneys assigned to these matters exercise the Attorney

21   General's delegated authority subject to her supervision. And there is no basis in any event to

22   disqualify the entire USAO-NV from these matters or dismiss the indictments. Neither the

23   FVRA nor Section 546 authorizes dismissal of an indictment. Dismissal of an indictment is

24

warranted only for a Due Process violation or the insufficiency of the pleadings under Rule 12, and the defendants can show neither.

## II.

### STATEMENT OF FACTS

On January 17, 2025, Jason Frierson, the United States Attorney for the District of Nevada who had been appointed by President Biden and confirmed by the Senate, resigned. *See* https://www.justice.gov/usao-nv/pr/united-states-attorney-jason-m-frierson-announces-resignation. By virtue of the default provisions of the FVRA, 5 U.S.C. § 3345(a)(1), Sue Fahami, who was then First Assistant United States Attorney for the district, became Acting United States Attorney. On March 28, the Attorney General appointed Ms. Chattah as United States Attorney pursuant to 28 U.S.C. § 546, effective April 1. *See* Exhibit 1. Pursuant to that statute, Ms. Chattah was authorized to serve as United States Attorney on an interim basis for 120 days. *See* 28 U.S.C. § 546(c)(2). Ms. Fahami remained as First Assistant United States Attorney.

On July 28—119 days into Ms. Chattah's term as United States Attorney—Ms. Chattah resigned from that position. *See* Exhibit 2. The same day, the Attorney General appointed Ms. Chattah as a Special Attorney under authority including 28 U.S.C. § 509, 510, and 515; designated her First Assistant United States Attorney "effective upon her resignation" as United States Attorney; and noted that as First Assistant United States Attorney, Ms. Chattah "will have the authority to serve as Acting United States Attorney upon a vacancy in the office subject to the conditions and time limitations of the Federal Vacancies Reform Act of 1998, 5 U.S.C. §§ 3345-3349(d)." *See* Exhibit 3. Effective the same day, Ms. Fahami's designation as First Assistant United States Attorney ended and she was

reclassified as the Executive United States Attorney, *see* Exhibit 4 at 3, paving the way for Ms. Chattah to assume that position and become Acting United States Attorney, as directed by the Attorney General.

The President has not nominated Ms. Chattah, nor anyone else, to serve as United States Attorney under 28 U.S.C. § 541(a), and the district court has not appointed Ms. Chattah, nor anyone else, to serve as United States Attorney for the District of Nevada under 28 U.S.C. § 546(d). Accordingly, Ms. Chattah continues to serve as Acting United States Attorney under the default provision of the FVRA, 5 U.S.C. § 3345(a)(1).

<div align="center">

**III.**

**ARGUMENT**

</div>

**A.    Analytical Framework**

United States Attorneys are officers of the Executive Branch. They are appointed by the President subject to the advice and consent of the Senate, 28 U.S.C. § 541(a), and are authorized to represent the United States in all litigation occurring within their district "[e]xcept as otherwise provided by law," *id.* § 547.

When a United States Attorney resigns or otherwise vacates her office, Congress has provided three methods for filling that vacancy on a temporary basis—and ensuring the uninterrupted functioning of the United States Attorney's Office—until a new United States Attorney is appointed by the President and confirmed by the Senate. Each of those methods has precise rules, benefits, and drawbacks. It is typically up to the President, or principal officers acting on his behalf, to decide which method is best suited to the circumstances, and those methods generally supplement each other.

First, in 28 U.S.C. § 546, Congress authorized the Attorney General to "appoint a United States attorney for the district in which the office of United States attorney is vacant" to

serve on an interim basis for 120 days or until a presidentially appointed United States Attorney is confirmed. *Id.* § 546(a), (c). A current nominee for the office of United States Attorney may serve as interim United States Attorney under that provision, but a person whom the President appointed and the Senate rejected is ineligible to do so. *Id.* § 546(b). If an interim appointment expires, and the vacancy has not otherwise been filled, the district court may appoint an interim United States Attorney. *Id.* § 546(d).

Second, in the generally applicable FVRA, Congress authorized certain individuals to temporarily perform the duties of a vacant office "in an acting capacity," 5 U.S.C. § 3345(a), subject to specified time limitations, *id.* § 3346. The default rule is that the "first assistant" to the vacant office serves as the "acting officer," *id.* § 3345(a)(1), unless the President designates certain other officers or long-serving agency employees to serve in that role, *id.* § 3345(a)(2)–(3). The FVRA generally prohibits current nominees for an office from filling the vacancy on an acting basis, unless they served the first assistant for at least 90 days within the year preceding the vacancy. *Id.* § 3345(b)(1)(B); *see NLRB v. SW General, Inc.*, 580 U.S. 288, 305 (2017). The FVRA is the "exclusive means" for authorizing an "acting official" to temporarily perform the duties of a vacant office, unless another statute provides a means for filling a vacancy, in which case both that statute and the FVRA are available. *See Hooks*, 816 F.3d at 556.

Third, Congress has authorized the Attorney General to delegate authority, including the non-exclusive duties of a United States Attorney, to other officers or employees. Officers exercising that delegated authority do not actually fill the Office of United States Attorney on an interim or acting basis and therefore cannot perform any exclusive, non-delegable function of that office. "The Attorney General is the head of the Department of Justice," 28 U.S.C. § 503, vested with all the functions and powers of United States Attorneys and "other officers of the Department," *id.* § 509. Congress also independently vested the Attorney General with

plenary authority to conduct and supervise litigation on behalf of the United States. *See id.*
§§ 516–19. Congress has specifically empowered the Attorney General to appoint other
attorneys to carry out the Department's functions, including special attorneys and special
assistants to the Attorney General, *id.* § 515(a), Assistant United States Attorneys, *id.* § 542,
special attorneys to assist United States Attorneys, *id.* § 543, and other "officials" to "detect and
prosecute crimes against the United States," *id.* § 533(1). The Attorney General may "direct all
United States attorneys, assistant United States attorneys, and special attorneys appointed
under [28 U.S.C. § 543] in the discharge of their respective duties." *Id.* § 519; *see id.* §§ 516,
518(b) (same). And the Attorney General may delegate those functions to "any other officer,
employee, or agency of the Department of Justice," *id.* § 510, and may direct any Department
officer "or attorney specially appointed by the Attorney General under law" to "conduct any
kind of legal proceeding, civil or criminal, ... which United States attorneys are authorized by
law to conduct," *id.* § 515(a).

**B.     Ms. Chattah Is Validly Serving as the Acting United States Attorney**

Under the FVRA, when an Executive Branch office subject to Presidential appointment
and Senate confirmation (a "PAS" office) becomes vacant due to the resignation of the
incumbent officeholder, another official may perform all the functions of that office on an
acting basis. *See* 5 U.S.C. § 3345(a). There is no dispute that the office of the United States
Attorney for the District of Nevada is a PAS office, *see* 28 U.S.C. § 541, and that it is vacant.
Accordingly, the FVRA permits the Executive Branch to appoint an acting officer to
temporarily exercise the functions and duties of that office.

As explained, § 3345(a) identifies three categories of individuals who may perform the
functions of a vacant office without having been nominated to that office by the President and
confirmed by the Senate. The President may designate another PAS officer, or certain other

agency officers or employees, to serve as the acting official. 5 U.S.C. § 3345(a)(2)–(3). If the President does not make such a selection, the "first assistant to the office" shall, by default, "perform the functions and duties of the office temporarily in an acting capacity," subject to statutory time limits. *Id.* § 3345(a)(1).

That default provision is at issue here. As explained above, Ms. Chattah resigned her position as interim United States Attorney on July 28, a day before her term was set to expire. Exhibit 2. The same day, pursuant to authority including 28 U.S.C. §§ 509, 510, and 515, the Attorney General appointed Ms. Chattah as a Special Attorney and designated her as the First Assistant as a backstop to her status as acting. Exhibit 3. The position of First Assistant itself became vacant on July 28 when the Attorney General, through her delegate, reclassified Ms. Fahami has Executive United States Attorney. *See* Exhibit 4. The Attorney General designated Ms. Chattah to serve as First Assistant by exercising her authority "to appoint one or more assistant United States attorneys in any district when the public interest so requires." *Id.* § 542(a). Having been lawfully designated as the First Assistant, Ms. Chattah was then entitled to "perform the functions and duties of the office" of United States Attorney "in an acting capacity," subject to the time limits of the FVRA. 5 U.S.C. § 3345(a)(1).

Notwithstanding that statutory authorization, the defendants argue that Ms. Chattah cannot perform the duties of the United States Attorney in an acting capacity because she was not the First Assistant United States Attorney on January 17, 2025, when the last Senate-confirmed United States Attorney resigned and the vacancy first arose. MTD at 15.[2] That contention lacks merit. The FVRA does not require a first assistant to be an incumbent in order to serve as an acting PAS officer under the default provision in § 3345(a)(1) for several reasons.

_____

[2]    The district court in *United States v. Giraud*, __ F.Supp.3d __, 2025 WL 2416737 (D.N.J. Aug. 21, 2025) credited this argument, but it was incorrect to do so for the reasons explained below.

First, consider the statutory text. A "vacant office" under § 3345(a) is a continuing state. The statute provides that "[i]f" a PAS officer "dies, resigns, or *is* otherwise unable to perform" the functions of the office, then the first assistant "shall perform" those functions in an acting capacity. *Id.* (emphasis added). Ms. Chattah's appointment complies with the plain meaning of that provision: no PAS United States Attorney existed at the time Ms. Chattah was designated as First Assistant, nor has one existed at any time since, and thus Ms. Chattah "shall perform" the duties of the office of United States Attorney on an acting basis (subject to statutory time limits) for as long as a PAS officer "is otherwise unable to perform" those functions. The defendants' contrary interpretation ignores the present-tense phrasing of the statute and the continuing nature of a vacancy. Moreover, the FVRA provides that if a vacancy exists, "the first assistant *to the office* of such officer shall perform the functions and duties of the office temporarily in an acting capacity." 5 U.S.C. § 3345(a)(1) (emphasis added). The statute does not require that the individual have been serving as the first assistant to any particular officer. Accordingly, whoever is the first assistant to a vacant office, at any time during the period of the vacancy, automatically becomes the acting officer. The FVRA does not limit acting service to only the individual (if any) who happened to be serving as the first assistant to the officer when the vacancy initially arose.

Next, consider § 3345's structure. Elsewhere in the same section, Congress explicitly imposed backward-looking eligibility requirements that do not apply to whether a first assistant is eligible to serve under § 3345(a)(1). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up).

8

Two paragraphs later, for instance, Congress made ineligible for a presidential Acting designation certain officials who had not served in the agency for at least 90 days in the year preceding when the vacancy arose. *See* 5 U.S.C. § 3345(a)(3)(A). In the next subsection of the statute, as well, Congress lifted the general prohibition on having an acting official also be the nominee if the nominee had served as first assistant for at least 90 days prior to the date on which the vacancy arose. *See id.* § 3345(b)(1)(A). No such backward-looking eligibility requirement, however, applies to an official who is appointed first assistant under § 3345(a)(1) and is not the nominee for the position in question. To the contrary, the general prohibition in § 3345(b)(1)(A) expressly contemplates that a first assistant may serve as an acting official even if she "did not serve in the position of first assistant" prior to the vacancy, so long as she is not also the nominee. *Id.*

That plain-text interpretation of the FVRA is both straightforward and longstanding. Indeed, the Government Accountability Office ("GAO")—a component of the Legislative Branch statutorily charged with monitoring FVRA compliance, *see* 5 U.S.C. § 3349(b)—has long agreed that a first assistant may serve as an acting officer under the FVRA even if she does not become first assistant until after the vacancy first arose. *See* Letter from Victor S. Rezendes, Managing Director, Strategic Issues, GAO to U.S. Senators Joseph I. Lieberman and Dan Burton (Dec. 7, 2001), available at https://www.gao.gov/assets/gao-02-272r.pdf. The Department of Justice's Office of Legal Counsel ("OLC"), which provides controlling advice to Executive Branch officials on questions of law concerning FVRA compliance, has adopted the same position. *See* Designation of Acting Associate Attorney General, 25 Op. O.L.C. 177, 179-81 (2001).

Any suggestion that this interpretation of the first-assistant provision in 5 U.S.C. § 3345(a)(1) would swallow up the other methods of designating acting officials would lack

merit. For example, § 3345(a)(1) will be unavailable to fill a PAS vacancy in the office of the agency head, particularly at the start of a presidential Administration, if the first assistant position itself is both vacant and a PAS office. And in other instances, the President may wish to designate an official other than the first assistant as the acting official. *See, e.g.*, *Designating an Acting Attorney General*, 42 Op. O.L.C. 182 (2018) (discussing the designation of Matthew Whitaker as Acting Attorney General under § 3345(a)(3)). In those circumstances and others, the Executive Branch must and does invoke § 3345(a)(2) or (3) to designate an acting official, subject to the distinct appointment and eligibility requirements in those provisions. But where such circumstances are absent, following the default statutory rule—appointing a new first assistant, and having that official assume acting duties under the FVRA—is the usual and most straightforward way to temporarily fill the vacancy.

Accordingly, upon her designation as First Assistant United States Attorney, Ms. Chattah automatically began serving as the Acting United States Attorney, subject to the time limits set forth in the FVRA.

**C.      An Acting United States Attorney Under the FVRA Is Not Limited to a 120-Day Period of Acting Service.**

The defendants contend, even if Ms. Chattah was validly designated Acting United States Attorney, her time period for serving expired before the defendants were indicted. MTD 25-37. That is incorrect.

As an initial matter, the defendants are correct to "assume[]" that, under controlling Ninth Circuit precedent, both 28 U.S.C. § 546 and the FVRA are available, nonexclusive options to designate and appoint officials to perform the functions of a United States Attorney. MTD 26 & n.33.

10

1    Section 3347(a) of the FVRA, the Act's "exclusivity" provision, explains how the FVRA

2  interacts with agency-specific statutes. The FVRA is the "exclusive means for temporarily

3  authorizing an acting official" to serve in a position otherwise subject to the advice and consent

4  of the Senate "unless ... a statutory provision expressly ... designates an officer or employee to

5  perform the functions and duties of a specified office temporarily in an acting capacity."

6  5 U.S.C. § 3347(a). When another statutory provision provides a different way of temporarily

7  filling the vacancy in question, the FVRA no longer is the "exclusive" means of filling that

8  vacancy. But critically, it still is an available means, unless the other statute expressly displaces

9  the FVRA. A contrary reading would invert the meaning of the FVRA's exclusivity provision,

10  transforming it from a rule about when the FVRA is exclusive of other statutes into one about

11  when other statutes are exclusive of the FVRA.

12    The Ninth Circuit has adopted just that interpretation of the statute. In *Hooks*, the Ninth

13  Circuit rejected the argument that the FVRA was inapplicable where an agency-specific

14  statute—there the National Labor Relation Act's vacancy provision applicable to the NLRB

15  General Counsel—"expressly provide[d] a means for filling" the vacancy in question. 816 F.3d

16  at 556 (discussing 29 U.S.C. § 153(d)). The "text of the respective statutes" "belied" any such

17  argument. *Id.* at 555. The existence of an agency-specific statute means only that "neither the

18  FVRA nor the [agency-specific statute] is the exclusive means of appointing" an acting officer,

19  and "the President is permitted to elect between these two statutory alternatives." *Id.* at 556. So

20  too here, an interim appointment under 28 U.S.C. § 546 supplements, rather than supplants,

21  the methods for designating an acting United States Attorney under the FVRA, as the

22  defendants correctly assume. MTD 26 n.33.

23    The defendants argue that, even if the FVRA is available for an acting official to perform

24  the functions of the office of United States Attorney, the Court should strike out the express

11

1    time limits the FVRA provides for acting service—here, 300 days—and replace it with the 120-

2    day time period derived from a different statute, 28 U.S.C. § 546(c). MTD 25–37. But if, as the

3    Ninth Circuit's decision in *Hooks* suggests, and as the defendants assume, the FVRA is fully

4    available even after an interim appointment under § 546 has expired, all of it is available,

5    including the distinct, reticulated time limits applicable to acting service for which the FVRA

6    expressly provides. *See* 5 U.S.C. §§ 3346, 3349a. The defendants' arguments to the contrary are

7    premised on their being "conflict[]" between the FVRA and § 546, but that is inconsistent with

8    *Hooks*, which suggests that there is no conflict.

9        Nor is it the case that failing to engraft the 120-day § 546 time limit on the FVRA would

10   render § 546 "superfluous." MTD 29. Despite the government's longstanding position that both

11   the FVRA and § 546 are available methods for dealing with United States Attorney vacancies,

12   *see Temporary Filling of Vacancies in the Office of United States Attorney*, 27 Op. O.L.C. 149, 149-50

13   (2003), § 546(d) has frequently been triggered in instances in which the time limit for an interim

14   United States Attorney's service has expired.[3] Both methods have pros and cons. For example,

15   an interim United States Attorney appointed by the court under § 546(d) may serve indefinitely

16   until the vacancy is filled, whereas an acting United States Attorney may serve as acting subject

17   to the FVRA's reticulated time limits. Neither of those distinct authorities supersedes or

18   subsumes the other.

19       The defendants declare that § "546's 120-day time limit should be strictly enforced given

20   the 'mischief' that brought it about." MTD 33. But that has nothing to do with the FVRA,

21   which is a different statute and serves a distinct, though overlapping, function.

22

---

23   [3]    For example, the District Court in Nevada appointed Dayle Elieson in 2018, *see*
     https://apnews.com/general-news-f92e92a41ce9467aaf60dfba7ce79301, and the District Court
     for the Southern District of New York appointed Jay Clayton in 2025, *see*
24   https://www.nytimes.com/2025/08/18/nyregion/jay-clayton-us-attorney-manhattan-
     trump.html.

**D.**  **Ms. Chattah Is Authorized to Supervise Criminal Prosecutions by the Delegation Even If Her Acting Designation Is Invalid.**

Although 28 U.S.C. § 547(1) authorizes the United States Attorney to "prosecute for all offenses against the United States" in her district, the authority to do so is not exclusive. All the functions of the United States Attorney, including the power to prosecute, are also vested in the Attorney General, 28 U.S.C. § 509, and the Attorney General has the power to supervise and direct United States Attorneys and Assistant United States Attorneys in the discharge of their duties, 28 U.S.C. §§ 510, 515, 519. In particular, the Attorney General may "specifically direct[]" any Department of Justice officer or other "attorney specially appointed" by her to "conduct any kind of legal proceeding … which United States attorneys are authorized by law to conduct…." 28 U.S.C. § 515(a). Accordingly, even if Ms. Chattah were not validly serving as the acting U.S. Attorney, she would be fully authorized, by delegation, to supervise criminal prosecutions in Nevada.

Ms. Chattah is authorized to supervise this case because the Attorney General validly appointed her as a Special Attorney under 28 U.S.C. §§ 509, 510, and 515 and delegated her the authority to supervise all pending prosecutions. Exh. 3. Whether or not Ms. Chattah qualifies as Acting United States Attorney under the FVRA, she still supervises this case under delegated authority from the Attorney General.

The defendants argue that the Attorney General cannot use those statutes to install Ms. Chattah as Acting United States attorney. *See* MTD at 24. But that is not what the appointment does. It does not empower her to be the "acting official." Instead, it delegates to her the Attorney General's authority to perform almost any function exercised by the Department of Justice, and her independent authority to conduct criminal prosecutions and supervise litigation. *See* 28 U.S.C. §§ 509, 510, 515–17, 518–19.

13

An acting official derives authority from the FVRA and is authorized to perform all "the functions and duties of the office" for which the official is acting. 5 U.S.C. § 3345(a). A non-acting official, by contrast, derives authority from a delegation, such as the 28 U.S.C. § 510, one of the statutes the Attorney General invoked here. That difference is significant because a non-acting official cannot exercise authority that is "exclusive to [the] office" and thus nondelegable. *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022). That distinction is reflected in the FVRA itself, which forbids a non-acting official from performing the exclusive functions associated with an office—that is, functions that only a properly appointed official holding the office—here a PAS United States Attorney—may perform. *See* 5 U.S.C. § 3348(a)(2). In short, while the FVRA is the exclusive means of empowering an official to be an acting official, *see id.* § 3347(a), it does not forbid the Attorney General from delegating to Ms. Chattah the nonexclusive functions associated with being a United States Attorney, such as supervising criminal prosecutions. *See* 28 U.S.C. § 346. Nor does it forbid the Attorney General from delegating to Ms. Chattah her own authority to prosecute crimes and supervise litigation. *See* 28 U.S.C. §§ 509, 510, 515–17, 518–19.

Every court of appeals to consider the issue has agreed with this plain-text interpretation of the FVRA. In *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), the Federal Circuit held that the FVRA did not forbid delegating the functions of a PAS office to a non-acting official. 35 F.4th at 1338. That case concerned a challenge to the denial of a rehearing request of an order invalidating a patent. The authority to decide such rehearing requests was vested in the Director of the U.S. Patent and Trademark Office, a PAS office. *See id.* at 1332; 35 U.S.C. § 3(a)(1). But because the offices of Director and Deputy Director were vacant, the rehearing decision was made by the Commissioner of Patents, who had been delegated all of the non-exclusive duties and functions of the Director under a standing order

14

1   issued by a previous Director. *See Arthrex*, 35 F.4th at 1332. As relevant here, the patent holder

2   challenged the rehearing denial on the ground that § 3347's exclusivity provision prohibited the

3   wholesale delegation of the Director's authority to a subordinate officer and thus deprived the

4   decision of "force or effect" under § 3348(d)(1). *See id.* at 1335; Arthrex Inc's Supplemental Br.

5   at 18–23; Arthrex Inc.'s Supplemental Reply Br. at 6–8.

6        The Federal Circuit rejected the challenge, explaining that the FVRA "does not …

7   restrict" the delegation and performance of a "PAS officer's delegable duties when he is

8   absent." *Arthrex*, 35 F.4th at 1339. In reaching that conclusion, the court relied on the

9   "unambiguous" definition in § 3348(a)(2), which defines "functions and duties" for purposes of

10  the FVRA's remedial scheme as those "that a PAS officer alone is permitted by statute or

11  regulation to perform." *Id.* at 1336; *see* 5 U.S.C. § 3348(d)(1). In light of that narrow definition

12  for the statutory remedial scheme upon which Arthrex relied, the court reasoned that the

13  FVRA "does not apply to delegable functions and duties" when those powers are exercised

14  pursuant to a valid delegation. *Arthrex*, 35 F.4th at 1336 (citing cases). The court rejected the

15  patent holder's argument that this interpretation would render § 3347(b) superfluous, explaining

16  that § 3347(b) "merely provides that a statute granting the head of an agency 'general authority

17  … to delegate [his] duties' does not exempt the agency from the FVRA." *Id.* at 1338. When

18  "Congress grants an agency head general delegation authority but specifies that certain duties

19  are non-delegable," the court explained, "§ 3347(b) makes clear that the FVRA still applies to

20  those non-delegable duties." *Id.*

21       The Third Circuit expressly relied on the Federal Circuit's decision in *Arthrex* when

22  resolving a similar FVRA objection in *Kajmowicz. See* 42 F.4th at 148 (citing *Arthrex*, 35 F.4th at

23  1336). *Kajmowicz* concerned a challenge to a rule that was originally issued by Matthew

24  Whitaker in his role as Acting Attorney General (not pursuant to a delegation of authority),

15

1   and that was later ratified by Attorney General Barr. The plaintiff challenged the validity of the

2   rule on the ground that Whitaker's designation as Acting Attorney General conflicted with the

3   FVRA. The Third Circuit rejected the challenge, reasoning that it did not need to resolve

4   whether Whitaker's designation violated the FVRA because the issuance of the rule was a

5   delegable function that could be subsequently ratified by the Attorney General under 5 U.S.C.

6   § 3348(d). *Kajmowicz*, 42 F.4th at 148. In so holding, the Third Circuit agreed with the Federal

7   Circuit's determination that the FVRA remedial provision's "language is unambiguous" and

8   "applies only to the functions and duties that a [Presidentially appointed and Senate-confirmed]

9   officer alone is permitted by statute … to perform." *Id*. (alterations in original) (quoting *Arthrex*,

10  35 F.4th at 1336). The Ninth Circuit then expressly relied on *Arthrex* and *Kajmowicz* in reaching

11  the same conclusion. *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*,

12  107 F.4th 1064, 1073 (9th Cir. 2024) (recognizing that agency officials can perform lawfully

13  delegated duties of a vacant office without violating the FVRA).

14  **E.    Ms. Chattah's Appointment Does Not Violate the Appointments Clause.**

15       The Appointments Clause "divides all constitutional officers into two classes: 'inferior

16  officers' and 'noninferior officers'" (called "'principal officers'"). *United States v. Smith*, 962 F.3d

17  755, 763 (4th Cir. 2020). "Principal officers must be appointed by the President with the advice

18  and consent of the Senate." *Id*.; *see Edmond v. United States*, 520 U.S. 651, 660 (1997). "Inferior

19  officers may be appointed in the same manner, but doing so is not constitutionally required."

20  *Smith*, 962 F.3d at 763. "Instead, should it so choose, Congress may authorize the President

21  alone [or the Head of a Department] to appoint inferior officers without the advice and consent

22  of the Senate." *Id*.; *see* U.S. Const. Art. II, § 2, cl. 2.

23       Ms. Chattah is an inferior officer for two reasons. First, United States Attorneys are

24  themselves inferior officers. *Myers v. United States*, 272 U.S. 52, 159 (1926); *United States v. Gantt*,

1    194 F.3d 987, 999–1000 (9th Cir. 1999) (same), overruled on other grounds by *United States v.*

2    *W.R. Grace,* 526 F.3d 499, 506 (9th Cir. 2008) (en banc); *United States v. Hilario*, 218 F.3d 19,

3    24–36 (1st Cir. 2000). That means that interim United States Attorneys and Acting United

4    States Attorneys are at most inferior officers, too. *See, e.g., id.* at 36. But even were that not so,

5    an Acting United States Attorney "under the FVRA is 'only charged with the performance of

6    the duty of the superior for a limited time and under special and temporary conditions.'" *Smith*,

7    962 F.3d at 764 (quoting *United States v. Eaton*, 169 U.S. 331, 343 (1898)). Even "acting heads of

8    departments"—such as an Acting Attorney General—"are not principal officers because of the

9    temporary nature of the office." *Smith*, 962 F.3d at 765 (citing cases). Accordingly, it was valid

10   for Congress to authorize the Attorney General, as Head of the Department of Justice, to

11   appoint Ms. Chattah as First Assistant United States Attorney and thereby make her Acting

12   United States Attorney by virtue of the FVRA.

13       The defendants argue that the Supreme Court impliedly overruled *Gantt* in *United States*

14   *v. Arthrex, Inc.*, 594 U.S. 1 (2021). *See* MTD 40. But *Arthrex* held that Administrative Patent

15   Judges in the Department of Commerce were principal officers because they possessed

16   unreviewable authority to make decisions on behalf of the agency, which is decidedly not the

17   case for United States Attorneys, whose decisions are supervised and can be reversed by the

18   Attorney General and the Deputy Attorney General. In any event, *Arthrex* reaffirms that

19   "'[w]hether one is an "inferior" officer depends on whether he has a superior other than the

20   President.'" 594 U.S. at 13 (quoting *Edmond v. United States*, 520 U.S. 651, 662 (1997)). Unlike

21   the members of the Patent Trial and Appeal Board at issue in *Arthrex*, United States Attorneys

22   are "'directed and supervised at some level by others who were appointed by Presidential

23   nomination with the advice and consent of the Senate'"—namely, the Attorney General—and

24   therefore qualify as inferior officers under the principles on which *Arthrex* itself relied. *Id.*

1    (quoting *Edmond*, 520 U.S. at 663); *see* 28 U.S.C. § 519 ("[T]he Attorney General … shall direct

2    all United States attorneys … in the discharge of their respective duties."). The defendants'

3    argument also overlooks *Myers*, in which the Supreme Court explicitly observed almost 100

4    years ago that United States Attorneys are inferior officers. *See Myers*, 272 U.S. at 159.

5    **F.    Dismissal of Indictment or Disqualification of the Entire USAO-NV Is Not**

6    **Warranted.**

7        Regardless, the Assistant United States Attorneys assigned to these cases can continue

8    prosecuting them because they derive their power to prosecute directly from the Attorney

9    General, and do not depend on a delegation of authority from the United States Attorney.

10   Although United States Attorneys lack express statutory authority to appoint Assistant United

11   States Attorneys, the Attorney General has that authority—and authority to remove them, too.

12   28 U.S.C. § 542(a) ("The Attorney General may appoint one or more assistant United States

13   attorneys in any district where the public interest so requires."); *id.* § 542(b) ("Each Assistant

14   United States attorney is subject to removal by the Attorney General."). The Attorney General

15   also has express statutory authority to "supervise all litigation to which the United States, an

16   agency, or officer thereof is a party, and [to] direct all United States attorneys, assistant United

17   States attorneys, and special attorneys appointed under section 543 of this title in the discharge

18   of their respective duties." *Id.* § 519; *see id.* § 516 ("[T]he conduct of litigation in which the

19   United States, an agency, or officer thereof is a party, or is interested, and securing evidence

20   therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney

21   General.").

22       The Ninth Circuit has held that an invalidly appointed United States Attorney does not

23   mean that the government lacked the power to prosecute the defendant. *See Gantt*, 194 F.3d at

24   998 ("An infirmity in the United States Attorney's appointment would not generally affect the

1    jurisdiction of this court so long as a proper representative of the government participated in the

2    action."). The First Circuit has likewise concluded that an Assistant United States Attorney's

3    "ability to act does not hinge on the authority of the local United States Attorney, but derives

4    from the Attorney General's plenary power over litigation to which the United States is a party,

5    *see* [28 U.S.C.] § 516." *Hilario*, 218 F.3d at 22; *see also United States v. Suescun*, 237 F.3d 1284,

6    1287 (11th Cir. 2001) ("An appointment of a United States Attorney that is not made as

7    provided by the Appointments Clause does not affect the Government's power to prosecute.");

8    *United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71 n.2 (D.P.R. 2000) (similar); *United States v.*

9    *Baldwin*, 541 F. Supp. 2d 1184, 1196 (D.N.M. 2008) (similar).

10       Pursuant to their authority derived from the Attorney General, the assigned Assistant

11   United States Attorneys can continue to prosecute these cases—which were initiated by validly

12   empaneled grand juries—subject to supervision by both Ms. Chattah and Senate-confirmed

13   officials in Main Justice, including the Attorney General and the Deputy Attorney General.

14       The defendants' attempt to disqualify the entire USAO-NV, MTD 47–48, likewise

15   plainly fails. "[E]very circuit court that has reviewed an officewide disqualification has

16   reversed." *United States v. Williams*, 68 F.4th 564, 572 (9th Cir. 2023) (reversing officewide

17   disqualification); *see United States v. Bolden*, 353 F.3d 870 (10th Cir. 2003) (same); *United States v.*

18   *Whittaker*, 268 F.3d 185 (3d Cir. 2001) (same); *United States v. Vlahos*, 33 F.3d 758 (7th Cir.

19   1994) (same); *United States v. Caggiano*, 660 F.2d 184 (6th Cir. 1981) (same); *cf. United States v.*

20   *Shah*, 43 F.4th 356, 360, 362–64 (3d Cir. 2022) (affirming denial of similar motion). Because

21   "disqualifying government attorneys implicates separation of powers issues, the generally

22   accepted remedy is to disqualify a specific" prosecutor, "not all the attorneys in the office."

23   *Bolden*, 353 F.3d at 879 (cleaned up). And here, the defendants cannot justify disqualifying any

24   prosecutor who worked on this case, let alone every prosecutor in the USAO-NV. *See United*

19

1   *States v. Lingala*, 91 F.4th 685, 694–96 (3d Cir. 2024) (affirming denial of motion to disqualify

2   prosecution team). "The disqualification of Government counsel is a drastic measure"—one "a

3   court should hesitate to impose ... except where necessary." *Bolden*, 353 F.3d at 878 (cleaned

4   up).

5       Moreover, even were Ms. Chattah not eligible to serve as the Acting United States

6   Attorney, "this Court could not dismiss the indictment on that basis." *United States v. Young*,

7   541 F. Supp. 2d 1226, 1235 (D.N.M. 2008); *see Gantt*, 194 F.3d at 998 ("The constitutionality of

8   § 546(d) would not affect the validity of indictments, by contrast, as indictments need only be

9   signed by an "attorney for the government."); *see United States v. Ruiz Rijo*, 87 F. Supp. 2d 69, 71

10  (D.P.R. 2000) (even assuming that the United States Attorney's appointment is invalid,

11  "Defendant's remedy would not be the dismissal of his indictment, for the appointment does

12  not affect defendant's basic constitutional rights."), *aff'd sub nom. United States v. Valdez-Santana*,

13  279 F.3d 143 (1st Cir. 2002).

14      The defendants' claim that their indictments violate due process, MTD 44–47, derives

15  entirely from their mistaken contentions that Ms. Chattah cannot serve as Acting United States

16  Attorney nor Special Attorney and First Assistant, and that remedy is inappropriate in any

17  event. As the Fourth Circuit put it in similar circumstances, "we are mystified as to exactly

18  what the connection is between the appointment of which" the defendants "complain[]" and

19  their "right to a fair trial." *Smith*, 962 F.3d at 765. There is a Due Process right to an impartial

20  judge, *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Tumey v. Ohio*, 273 U.S. 510 (1927),

21  and a properly constituted jury or grand jury, *Peters v. Kiff*, 407 U.S. 493 (1972). But there is no

22  Due Process right to choose one's prosecutor. Nor is there any government conduct in this case

23  that denies "fundamental fairness" and is "shocking to the universal sense of justice." *Kinsella v.*

24  *United States ex rel. Singleton*, 361 U.S. 234, 246 (1960) (cleaned up).

1    Federal Rule of Criminal Procedure 12 provides for dismissal for (a) a defect in

2    instituting the prosecution or (b) deficiency of the indictment. *See* Fed. R. Crim. P. 12(b)(3)(A)

3    and (B). The indictments in these cases are not deficient under Rule 12(b)(3)(B) because Rule

4    7(c) requires only that the indictment state facts that constitute a federal offense and be signed

5    by an attorney for the government, all of which are present here. *See* 2:25-cr-227, ECF No. 1;

6    2:25:cr-230, ECF No. 1; 2:25-cr-240, ECF No. 5; 3:25-cr-26, ECF No 17.

7    Nor have the defendants identified any defect in instituting these prosecutions. The

8    defendants do not dispute that the grand juries that indicted them were properly empaneled.

9    And, as explained, there is no requirement that the U.S. Attorney sign indictments, and each of

10    the indictments at issue here was signed by an attorney for the government other than Ms.

11    Chattah. Indeed, Ms. Chattah did not even review or approve the indictments in the first

12    place—that task falls to the Criminal Chief or one of her deputies.[4]

13    In any event, the defendants lack standing to challenge their indictments or seek to the

14    dismissal of the Assistant United States Attorneys working on their cases. Federal courts lack

15    jurisdiction to consider claims where a plaintiff lacks standing. *Warren v. Fox Family Worldwide,*

16    *Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). "[A] plaintiff must demonstrate standing separately

17    for each form of relief sought." *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010)

18    (citation and quotation omitted). To establish the irreducible constitutional minimum of

19    standing, the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the

20    challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

21    decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Because Ms. Sigal was not involved

22

23

24    [4]    The government can provide documents reflecting the USAO-NV indictment approval
process for the Court's review *in camera* if the Court requests.

21

1  in approving or filing the indictments and, other than supervising the response to the motions to

2  dismiss, is not directing the litigations against the defendants, they cannot show injury.

3  **G.      This Court Should Not Designate an Interim United States Attorney.**

4          Finally, the defendants argue that this Court should appoint another interim United

5  States Attorney under 28 U.S.C. § 546(d). MTD at 48. That statute's language is permissive,

6  not mandatory. *See* 28 U.S.C. § 546(d) ("If an appointment expires under subsection (c)(2), the

7  district court for such district *may* appoint a United States attorney to serve until the vacancy is

8  filled."). Defendants do not have standing to compel the district court to make such an

9  appointment, *Spokeo*, 578 U.S. at 338, and it would be improper in any event. That section

10  applies only "[i]f an appointment expires under subjection (c)(2)." In other words, it applies

11  only when (1) the Attorney General's own appointment of an interim United States Attorney

12  has expired and (2) the office of United States Attorney remains vacant after that 120-day

13  period has ended. *Colon v. United States Attorney for the District of Puerto Rico*, 576 F.2d 1, 6–7

14  (1st Cir. 1978). Here, Ms. Chattah resigned her interim position as United States Attorney

15  before her 120-day term expired. Accordingly, the district court has no authority to appoint an

16  interim United States Attorney.

17

18

19

20

21

22

23

24

22

**IV.**

**CONCLUSION**

Based upon the above, this Court should deny the defendants' motion.


DATED this 10th day of September, 2025.

<div style="margin-left:50%">

SIGAL CHATTAH
Acting United States Attorney


*/s/ Adam Flake*
_____
ADAM FLAKE
Appellate Division Chief and
Assistant United States Attorney

</div>