Rene L. Valladares
Federal Public Defender
Nevada Bar No. 11479
Jeremy C. Baron
Assistant Federal Public Defender
District of Columbia Bar No. 1021801
jeremy_baron@fd.org
Heidi Ojeda
Assistant Federal Public Defender
Nevada Bar No. 12223
heidi_ojeda@fd.org
411 E. Bonneville Ave. Suite 250
Las Vegas, NV 89101
(702) 388-6577
(702) 388-5819 (fax)

Sean A. McClelland
Assistant Federal Public Defender
Nevada Bar No. 16581
sean_mcclelland@fd.org
200 S. Virginia St. Suite 340
Reno, Nevada 89501

Attorneys for Giann Icob Salazar Del Real

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| United States of America, | Case No. 2:25-cr-227-JAD-BNW |
| Plaintiff, | |
| v. | **Opposition to motion for stay pending appeal**[1] |
| Giann Icob Salazar Del Real, | |
| Defendant. | |

---

[1] This opposition is timely filed.

## ARGUMENT

The Court correctly concluded Sigal Chattah is ineligible to serve as the acting U.S. Attorney for the District of Nevada. The government is now pursuing an interlocutory appeal of the Court's order and seeks a stay pending appeal. The government is not entitled to a stay. *See Nken v. Holder*, 556 U.S. 418, 425-26 (2009) (listing the relevant factors). The government's appeal is unlikely to succeed on the merits. The government will suffer no injury, much less irreparable injury, without a stay. The defense is being harmed by the government's appeal. And the public interest weighs against a stay. The Court should deny the motion.

## I.  A court may grant a stay in narrow circumstances.

"Unless a court issues a stay, a trial court's judgment (say, dismissing a case) normally takes effect despite a pending appeal." *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015). In certain circumstances, however, federal district courts may—but need not—stay an order or judgment pending an appeal. *See* Fed. R. App. 8(a)(1)(A). The applicant bears the burden of persuading the district court that a stay is appropriate. *See Nken*, 556 U.S. at 433-34.

When evaluating whether to issue a stay, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Nken*, 556 U.S. at 425-26. A court

need not concern itself with mere "preservation of the status quo." *Golden Gate Restaurant Ass'n v. San Francisco*, 512 F.3d 1112, 1116 (9th Cir. 2008).

Whether to issue a stay "may depend to a large extent upon determination of the [government's] prospects of success in its appeal." *Hilton*, 481 U.S. at 778; *see also Haggard v. Curry*, 631 F.3d 931, 935 (9th Cir. 2010) (calling this "[t]he most important factor"). The applicant needs to "show either a probability of success on the merits and the possibility of irreparable injury, or that serious legal questions are raised and the balance of hardships tips sharply in [the applicant's] favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (per curiam). "[A]t a minimum," the applicant needs to establish "a substantial case for relief" on appeal. *Id.* at 968; *see also East Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1028 (9th Cir. 2019) (quoting *Hilton* and requiring a "'strong showing'").

As for the remaining factors, the government needs to demonstrate "irreparable injury is *likely*"—or, in other words, "probable"—"in the absence of" a stay. *Levia-Perez*, 640 F.3d at 968. The public interest factor often merges with the possibility of irreparable harm to the government. *Cf. id.* at 970.

**II.    The government is not entitled to a stay.**

None of the relevant factors supports a stay here.

**A.    The government is unlikely to succeed on appeal.**

To secure a stay, the government "at a minimum" must demonstrate it has "a "substantial case for relief" on appeal. *Leiva-Perez*, 640 F.3d at 968; *see also East Bay Sanctuary Covenant*, 934 F.3d at 1028 (requiring a "'strong showing'"). The government fails to satisfy that crucial requirement.

### 1. Ms. Chattah is ineligible under 5 U.S.C. § 3345(a)(1).

The Court's order convincingly demonstrates Ms. Chattah is ineligible to serve as the acting U.S. Attorney under 5 U.S.C. § 3345(a)(1). Order at 7-20. Under that provision, when a vacancy occurs in an Executive Branch position that requires Senate confirmation (like the U.S. Attorney position), the person who is serving as the first assistant at the time the vacancy occurs automatically becomes the acting officer. Because Ms. Chattah was not serving as the first assistant when the vacancy occurred—when Mr. Frierson resigned on January 17, 2025—she was ineligible under subsection (a)(1).

The government nevertheless "stands by its position that" Ms. Chattah may serve under subsection (a)(1). Stay Motion at 3. The government reiterates its view that the first assistant need not be in place when the vacancy occurs; rather, the first assistant can be "designated months after the vacancy occurs." Order at 7. The Court disagreed: the provision "operates only on first assistants in place when vacancies begin." *Id.* at 16. The government's stay motion presents three contrary arguments, but all three are insubstantial.

First, the government relies on interpretations from the Government Accountability Office and the Office of Legal Counsel. Stay Motion at 4. The Court has already addressed those interpretations. Order at 14-15. The Court correctly concluded it owes no deference to these agencies, especially because they have issued conflicting opinions coming out both ways on the question.

Second, the government complains that the Court's interpretation will make Section 3345(a)(1) "effectively unavailable during presidential transitions." Stay

3

Motion at 4. According to the government, it is common for both officers and their first assistants to resign before a presidential transition occurs, which would leave the new incoming administration with a vacant office and a vacant first assistant position and would thus leave the administration unable to rely on subsection (a)(1). But in that event, there are ample alternative options: the administration can rely on subsections (a)(2) or (a)(3) or a position-specific statute like 28 U.S.C. § 546 to designate a temporary officer in lieu of subsection (a)(1). *See* Order at 25-26 (identifying as much). This scenario provides no reason to adopt the government's strained interpretation of subsection (a)(1).

Third, the government argues its position does not render subsection (a)(1) superfluous. It suggests the administration may rely on subsections (a)(2) or (a)(3) when the first assistant position requires Senate confirmation, or when the administration "wants to leave the existing first assistant in place and appoint someone else to be the acting officer." Stay Motion at 4. The Court already addressed the first "hypothetical scenario," which is "likely to be rare." Order at 10. Indeed, on information and belief, Main Justice contains roughly three officers whose first assistants require Senate confirmation,[2] but there are hundreds of officers housed within the Department of Justice whose first assistants do not require Senate confirmation.[3] These numbers confirm this hypothetical scenario is

---

[2] On information and belief, the Attorney General, the Deputy Attorney General, and the Associate Attorney General. *See* 28 U.S.C. § 508.

[3] On information and belief, the eleven Assistant Attorneys General, *see* 28 U.S.C. § 508; the Solicitor General; the 93 U.S. Attorneys; the 94 U.S. Marshals; and the Director of the U.S. Marshals Service, to provide some examples.

4

much too rare to defeat surplusage concerns. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001); Order at 10 (citing this case).

The government's second hypothetical fares no better. It would be a strange occasion if the administration did not want the existing first assistant to occupy the acting officer role, yet the administration thought highly enough of the existing first assistant that it refused to remove the individual from the first assistant role to allow for backfilling. If the administration were in that position—not wanting the existing first assistant to occupy the acting officer role, but wanting the existing first assistant to remain in a high-level position in the agency—the simplest solution would be to place the existing first assistant in a similar role in the agency. Indeed, it appears the administration pursued this route here by promoting Sue Fahami to Executive Assistant U.S. Attorney, which created the first assistant vacancy that Ms. Chattah purported to backfill. Once again, this "hypothetical scenario" is "likely to be rare." Order at 10. It cannot save the government's interpretation from a serious surplusage problem.

In sum, the Court correctly concluded Section 3345(a)(1) applies only to a first assistant who is serving at the time the vacancy occurs. The administration cannot simply backfill the first assistant position with anyone it likes. In reaching that conclusion, the Court thoroughly surveyed the statute's text, structure, and legislative history. *See* Order at 7-20. But the government neglects to respond to the lion's share of the Court's analysis. *See* Stay Motion at 3-4. The Court should conclude the government's appeal is insubstantial.

### 2. Ms. Chattah cannot be a de facto acting officer.

The government further "stands by its position that," as a workaround, the Attorney General may permissibly delegate the full powers of the vacant U.S. Attorney position to Ms. Chattah in her capacity as a Special Attorney in Main Justice. Stay Motion at 3. "This argument runs headlong into" 5 U.S.C. § 3347, which squarely forecloses this delegation theory. Order at 20. Under that statute, the administration cannot rely on an agency head's general delegation authority to create a de facto acting officer. Thus, the Attorney General cannot delegate the full powers of the U.S. Attorney position to Ms. Chattah to allow her to serve as a de facto acting U.S. Attorney.

The government maintains an agency head can designate anyone a de facto acting officer and vest in that individual all the delegable duties of the vacant position. Thus, the Attorney General can pick anyone of her choosing and make that person the de facto acting officer, so long as the Attorney General does not purport to delegate any of the vacant position's nondelegable duties. Stay Motion at 4-5. Notably, the government once again fails to identify any powers of the U.S. Attorney that it believes are nondelegable. *See* Order at 25. In short, the government is arguing that the Attorney General can use her general delegation authority to create de facto acting U.S. Attorneys who are authorized to perform every jot and tittle of the Senate-confirmed position, and who could theoretically serve in perpetuity without ever undergoing the nomination and confirmation process.

To support this erroneous argument, the government relies on two cases: *Arthrex Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328 (Fed. Cir. 2022), and *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. U.S. Dep't of Homeland Sec.*, 107 F.4th 1064 (9th Cir. 2024). The Court has already addressed both cases. Order at 21-23 & n.8. *Gonzales* supports the Court's interpretation. Order at 21-23. *Arthrex*'s contrary statutory analysis contains "a significant omission" that renders its reasoning unpersuasive. *Id.* at 23 n.8. These cases fail to meaningfully advance the government's request for a stay.

In sum, under Section 3347, the administration cannot avoid the Federal Vacancies Reform Act by using general delegation authority instead. Indeed, one of Congress's primary goals in passing the statute was to foreclose this argument. Once again, in deciding this issue, the Court thoroughly surveyed the statute's text, structure, and legislative history. *See* Order at 20-26. But the government again neglects to respond to the lion's share of the Court's analysis. *See* Stay Motion at 4-5. The Court should again conclude the government's appeal is insubstantial.

**B.     The government lacks any conceivable injury.**

The government's poor showing on the merits suffices to reject the stay request. In any event, the government cannot demonstrate it will be irreparably harmed without a stay. The Court should deny a stay for this separate and independent reason.

As a remedial matter, the Court "disqualified" Ms. Chattah "from supervising" the four cases before the Court, and it also disqualified her from supervising "any attorneys in the handling of these cases." Order at 32. The Court

ordered "[t]he government attorneys handling these cases" to "file statements in the docket that they are not being supervised by Ms. Chattah in their prosecution of these cases." *Id.* The government attorneys who made appearances in the four cases filed corresponding certifications by the relevant deadline.

At this point, there are no pending remedial matters that could conceivably require a stay. The Court disqualified Ms. Chattah from supervising the four relevant prosecutions. The government purported to comply with the Court's certification requirement rather than seek an extension of the certification deadline pending the instant motion for a stay pending appeal. Thus, even if the Court issues a stay now, the stay will not affect the certification requirement, which the government has already attempted to satisfy. In addition, because the case is now pending in the court of appeals, most further proceedings in this Court will likely be in effect stayed by virtue of the interlocutory appeal. *United States v. Powell*, 24 F.3d 28, 31 (9th Cir. 1994) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.") (cleaned up). It is unclear what precise practical benefit the government seeks to obtain by securing a stay.

The government maintains it "will be seriously and irreparably harmed without a stay" because the disqualification order "has profound implications for the enforcement of federal law throughout [the] district" and will disrupt "the executive

8

chain of command." Stay Motion at 5-6.[4] But the Court did not disqualify Ms. Chattah "throughout [the] district." *Id.* at 5. Rather, its order applies to the four defendants at issue in these four cases. The four defendants' criminal cases are unlikely to advance to resolution in the district court while the appeal remains pending. Notably, the government previously represented Ms. Chattah had no role in approving the four indictments at issue here, which throws into doubt whether Ms. Chattah would be exercising day-to-day case management in these four cases even if the government were to receive a stay and even if the cases were to meaningfully advance in this Court while the appeal is pending. As for the government's interlocutory appeal, it appears those proceedings are being handled by Main Justice, not the local U.S. Attorney's office, so the Court's disqualification order is unlikely to have a substantial impact on the appeal, which the defense has moved to expedite. In brief, the government's irreparable injury argument seriously overstates the scope of the Court's order.

   Even if the Court had ordered districtwide disqualification, the government would be unable to demonstrate irreparable injury. The government claims it will be harmed if Main Justice supervises these prosecutions in lieu of Ms. Chattah. The government's argument is long on abstractions and short on details about what, exactly, the harm would be. It is hard to see why the Department of Justice would

---

[4] The government cites *United States v. Williams*, 68 F.4th 564 (9th Cir. 2023), to support its irreparable injury argument. Stay Motion at 6. The relevant portion of the opinion involved the question whether a disqualification order is a collateral order for purposes of interlocutory appellate jurisdiction, not whether a disqualification order amounts to irreparable injury for purposes of a stay pending appeal.

9

suffer some form of concrete injury if Main Justice were to provide oversight in this district. And the government's prior representations about Ms. Chattah's lack of supervision in the four cases at issue here provides reason to question the extent to which she intends to provide meaningful supervision in criminal cases in this district. It is therefore unclear whether a hypothetical districtwide disqualification order would have a tangible operational impact that would justify a stay. The government's speculative arguments on injury are insufficient to support a stay.

### C. The appeal is harming the defense.

The defense is being harmed by the government's interlocutory appeal. Criminal defendants have an interest in the prompt resolution of their criminal proceedings. *United States v. Myers*, 930 F.3d 1113, 1118-19 (9th Cir. 2019). The appeal will likely risk delaying the resolution of their cases. Meanwhile, all four defendants are currently in custody, which exacerbates the harm caused by delay. Because the appeal itself is causing injury to the defense, this factor should support denying a stay.

### D. The public interest weighs against a stay.

Denying a stay will promote the public interest. "The Senate's advice and consent power is a critical structural safeguard of the constitutional scheme." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017) (cleaned up). The Federal Vacancies Reform Act "was framed as a reclamation of the Congress's Appointments Clause power." *SW Gen., Inc., v. N.L.R.B.*, 796 F.3d 67, 70 (D.C. Cir. 2015). The government's merits arguments are inconsistent with these constitutional and statutory protections. Thus, when an individual is purporting to serve in a high-

level Executive Branch position in a manner that is inconsistent with the constitutional and statutory regimes, the public interest supports maintaining a disqualification order pending appeal. A contrary conclusion regarding the public interest would be inconsistent with the serious "separation-of-powers concerns" posed by this scenario. *Williams*, 68 F.4th at 570-71.

The government suggests the public interest supports a stay, and it invokes "principle[s]" like "judicial respect for the prosecutor's independence." Stay Motion at 6-7 (cleaned up). But the government cites no cases supporting the notion that the public has an interest in allowing the Executive Branch to maintain an ineligible individual as the head prosecutor in a district while the government appeals a disqualification order. To the contrary, while federal courts generally lack authority to "dictate to the Executive branch who will serve as its prosecutors," courts must occasionally exercise disqualification authority to correct "a violation of the Constitution, a federal statute, or a procedural rule." *Williams*, 68 F.4th at 571 (cleaned up); *id.* at 573-74 (similar). When a federal court issues a disqualification order to correct this type of legal violation, and when the government seeks a stay pending appeal, the public interest is inconsistent with a stay.

## Conclusion

The Court should deny the government's motion for a stay pending appeal.

**Dated**: October 15, 2025.

Respectfully submitted,

Rene L. Valladares
Federal Public Defender

*/s/ Jeremy C. Baron*
Jeremy C. Baron
Assistant Federal Public Defender

*/s/ Heidi Ojeda*
Heidi Ojeda
Assistant Federal Public Defender

*/s/ Sean A. McClelland*
Sean A. McClelland
Assistant Federal Public Defender